# Vance *vs* Lukenbill.

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Release.*

CHANCERY.

*Case .* 61

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

*January 29.*

ALTHOUGH we think it entirely clear that the agreement between Vance, the creditor, and Lukenbill, the debtor, was that in consideration of the payment of $850 down and of the stipulation to pay $150 with interest in eighteen months, a much larger demand then due by note, was to be considered as satisfied and released, yet as such an arrangement, if there were no other consideration, was a mere naked agreement on the part of the creditor to give up a part of his debt when he was entitled to receive and the debtor was bound to pay the whole, we do not perceive upon what ground a Court of equity can interpose to protect the debtor from the enforcement of the entire residue of the original demand, and especially when he has not complied with the terms of the agreement with respect to

the postponed payment.    It may be true that if a cred-
itor resorts to such an agreement as a means of pro-
curing partial payment from an unwilling debtor, in-
tending at the time, to coerce the residue in violation of
his promise, he would be guilty of a deception which
though intended merely to induce another person to
perform an existing duty for his benefit, would not, upon
principles of pure morality, be justified by a considera-
tion of the object in view.    But even if on this ground,
the Chancellor might refuse his aid if called on to en-
force the demand to its original extent, yet it is a very
different question whether he should interpose to pre-
vent the enforcement of a legal demand ascertained by
judgment, upon the appeal of a debtor who has no other
merit than that of having paid a part of his debt upon
the creditor's promise to forgive the residue.    Can he
say that he was cheated into the payment of part of
his just debt by this promise of his creditor, or that he
was deluded into the payment by the belief that he was
or would be thereby discharged, or by his confidence in
the creditor's performance of his promise?    Such a com-
plaint does not reach the conscience nor move the dis-
cretion of the Chancellor, unless it be accompanied with
some allegation of injury, actual or apprehended, con-
sequent upon the deception or breach of promise.
Whether any loss or injury which the debtor himself
might sustain, could make such deception or delusion a
proper ground of relief in equity, we need not decide.
In this case the debtor was not induced by the agree-
ment or promise of the creditor, to involve his friends
or to assume any onerous engagements upon himself, or
even to sacrifice his property.    But having in his pocket
or within his immediate reach, the large sum of $850,
and being, as the testimony shows, amply able to pay
the entire demand, (between $1,200 and $1,500,) he is
induced to pay the $850 in hand and to stipulate for the
payment of the small sum of $150 with interest, in
eighteen months, by his reliance in the promise of his
creditor to take these payments in satisfaction of the
whole, or by his mistaken belief that the original de-
mand was released by the terms or effect of the agree-

ment. This is not even a case of compassion; and the question suggests itself, what inducement the creditor had for entering into such an agreement?

The answer to this question as presented by the record, is that Lukenbill's property was not open to the ordinary legal remedies, that such as he was the avowed owner of, was probably insufficient to pay the debt, that the merchants with whom it was, some years before contracted for goods to supply his retail store, under the impression that he was *broke* or was covering up his property from his creditors, and to avoid the trouble and risk of coercion under such circumstances, offered the debt to him at 50 cents in the dollar, and afterwards transferred it to Vance at that price ; that Vance very soon instituted an attachment, the levy of which was avoided or removed by a mortgage from Lukenbill, of a house and lot which, as afterwards discovered, he had previously conveyed by absolute deed, to his father-in-law, and that upon a second attachment being levied upon some personal property, probably far from sufficient to pay the debt, the agreement relied on was entered into and reduced to writing, in an instrument signed by the parties and retained by Vance. The fair inference from these facts is, that Vance was induced to enter into the agreement by the apparent difficulty and uncertainty of otherwise realizing so large a part of his demand as was thereby secured. And as it is further shown by the evidence, that Lukenbill, up to the time of making this arrangement, was concealing his means of payment by assigning to his brother-in-law debts due to himself, and afterwards received by him, by carrying on a partnership store in the sole name of the other partner, and under the repeated avowals of both, that he had no interest, and by other means, and that immediately after this arrangement, he purchased property, repaired and erected buildings and set up several different establishments for business in his own name, the inference rather is, that his fraud induced the arrangement to the injury of Vance, who doubtless at the time, intended to abide by the agreement, than that he was induced to enter into the agreement by the fraud

VANCE
*vs*
LUKENBILL.

That a creditor in order to get in hand a part of a debt due, agreeing to abate a part of the balance, is no sufficient consideration for refusing to make such abatement, or for the Chancellor to injoin its collection.

of Vance, or that he has been or will be subjected, by a breach of the agreement, to any loss or injury which can give merit to his case either in law or equity.

The agreement, it is true, provides in effect, that the attachment is to be dismissed agreed; and Lukenbill alleges in his bill, that his claim of damages for its having been sued out without probable cause, was given up and entered into the consideration of the arrangement or compromise which was made. But the facts already stated show that there was not the slightest foundation for such a claim; and it is manifest from the testimony that none such was asserted or alluded to in making the arrangement. Nor is it at all probable that the idea that there was or might be such a claim entered into the mind of either party at the time. And as the dismissal of the attachment certainly was no consideration moving from the debtor for giving up a part of the debt, we are satisfied that there was no consideration for the agreement of Vance to release or give up his original claim, except such as arose from the unwillingness of the debtor to pay the whole, and from the payment of a part and the promise to pay another part, still leaving a considerable portion unpaid.

Whether if the written instrument executed as evidence of this arrangement, had been or contained a technical release, Vance could have impeached it successfully, either at law or in equity, on the ground of fraud, we need not enquire. We doubt whether if it were a technical release, and if the fact of its having remained in the possession of Vance, were a sufficient reason for not having relied on it at law, a Court of equity should, under the circumstances, have given effect to it by an injunction against the judgment obtained for the residue of the original debt. But as the instrument though containing words of release, was neither sealed nor delivered, and does not appear to have been intended to be delivered, since it contains the stipulation of Lukenbill to pay the $150, it neither is nor can operate as a technical release, but evidences, at most, only an agreement to release, which the Chancellor would not enforce unless fairly obtained and founded on a suffi-

cient consideration. That the consideration or induce- <span style="float:right">WICKLIFFE, &c.<br>vs<br>ENSOR, &c.</span> ment in this case, such as we have ascertained it to be, was in view of the law, wholly worthless, and in fact nothing, is well established by numerous authorities, and the principle was recognized by this Court in the case of *Cutter & Co.* vs *Reynolds*, (8 *B. Monroe*, 596.)

It is scarcely necessary to say that the consideration paid by Vance for the demand on Lukenbill, though it might well operate with him to induce a voluntary abatement of a part of the debt, constitutes no ground of equity on the part of the debtor, and is of itself, no basis for decreeing a compulsory abatement; and although it might aid in determining the question of fact as to the nature or terms of the agreement, if it were doubtful, it is entitled to no effect in determining whether there was a sufficient consideration for it.

In view of the whole case then, we are of opinion that Lukenbill has made out no sufficient ground for enforcing in equity, the agreement relied on or injoining the judgment obtained against him in apparent violation of its terms.

Wherefore, the decree is reversed and the cause remanded, with directions to dismiss the complainant's bill.

*Thruston and Pope* for appellant; *Guthrie and Tyler* for appellee.